We'll now move to the final argument on today's calendar, which is Kutuizaca v. Garland. If I'm pronouncing it correctly, I think I am. Yes, sir. Ms. Press? Yes, Your Honor. And for the government, Ms. Sarko? Yes. All right. Okay. So, Ms. Press, you reserve three minutes for rebuttal, so that gives you seven minutes out of the gate. You may proceed. Thank you, Your Honor. Thank you. Good afternoon. Good afternoon. May it please the Court, Rebecca Press for Petitioner Mr. Javier Pucha Kutuizaca. The agency here committed a number of grave errors in finding that Mr. Pucha is ineligible for humanitarian relief based on his Indigenous identity. First, both the IJ and the Board ignored key record evidence, with the immigration judge failing to answer many questions regarding eligibility. The Board, perhaps in an effort to correct the IJ's mistakes, engaged in impermissible fact-finding and dismissed as waived a dispositive issue. But I'd like to begin with another dispositive error, specifically the agency's application of asylum's one central reason standard to Mr. Pucha's withholding of removal application. The asylum statute requires an applicant to show that his protected characteristic is quote, at least one central reason, and quote, motivating the harm he fears. The withholding statute requires that the protected characteristic constitute a reason. Mr. Pucha asked this Court to do what it does best. The statute doesn't say a reason, right? It does, Your Honor. Section 1231B3C? Well, I mean, the language we're really focused on is because, right? Isn't that really the key? Whether there is, because of a particular reason, an action was taken, right? Sure, Your Honor. Well, I actually believe that those two inquiries, the because of or on account of, which have been used interchangeably, and then the one central reason or the a reason inquiries are related inquiries, but they are distinct. So I am not standing here suggesting that an applicant for withholding need not show that the persecution he fears is on account of a protected ground. It certainly is. The question here is the degree to which the protected characteristic must motivate that harm. So in the context of asylum, an asylum applicant shows that the protected characteristic constitutes one central reason and is on account of that reason. In the withholding context, the degree to which the harm must motivate, I'm sorry, the protected characteristic must motivate the harm feared is a reason, is lower than the one central reason standard. So the because of or on account of is distinct from the degree to which the protected characteristic must motivate the harm. Thank you. Why, if in fact the terms because of are in the same provision and for a reason is in the same provision, why and they can be read differently. One can be the first one could be but for causation, it seems to me. You know, you can interpret it different ways. It might be something less than that. It might just be, you know, a connector that doesn't carry that import. But then and then you have for a reason and reason here is not is not in the same way is not. It's it's not the context is not doesn't have to do with trying to fix on what the motivation, the right, the right level of motivation has to be. It just says for a reason described in some paragraph. So that's capable of being viewed in different in different ways. And if in fact, if you have that, why, at the very least, isn't this ambiguous, in which case the agency's ruling would stand. Sure. Well, I don't think the term for a reason or it's it's my position that the term for a reason or a reason is not ambiguous that with that or sort of understanding that term in the ordinary plain language. We understand that a reason can be anywhere from one of many reasons to be exclusive reason. But if this court were to disagree and think that the other thing is, though, you really can't limit it to just for a reason. It's you have to read the whole phrase, whether the aliens life or freedom would be threatened for a reason described in some paragraph a race religion. Right. And that's a race religion would be what they're talking about some paragraph a. So, isn't it just possibly I'm not suggesting it's the final interpretation, a shorthand way of just saying instead of that would be threatened based upon race, religion, political opinion, etc. Described, you know, and above, or something of that sort. Leave the word a reason out it doesn't really serve that much of a purpose, except, couldn't it be just shorthand. Well, I think it does serve. I think Congress thought that it did serve a purpose because it included it in the statute, but to get to your because of aliens race religion nationality membership in a particular social group or political opinion, and at least that section. lists the various the various protected groups. This one doesn't it just says described in some paragraph a understood your honor I mean I would just repeat my point that I do believe that because of or on account of requirement is distinct from the degree to which the protected characteristic has to motivate the harm, but to your question regarding why shouldn't the then I would say that this court shouldn't give that case Chevron deference, precisely because it didn't consider the language as written in the statute, it, it, it began its decision based on the premise of silence and then for extra textual just reasons concluded that the one central reason should be incorporated into the withholding statute so if this court were to find that there is ambiguity, regardless matter of CTL should not be given Chevron deference because it didn't it in its appropriate responsibility to fill in the ambiguity in the terms. And I also think that the, and that there is some context that does provide clues to what Congress was thinking here and the reason that they were thinking that a reason or for a reason is distinct from the one central reason standard and that is the explicit incorporation of the sister or section subsections two and three of the where the one central reason standard is found subsections two and three were explicitly incorporated into the withholding statute, suggesting that subsection one where the one central reason standard is not found that it was not incorporated purposefully or intentionally. And so I think that provides further evidence, first beginning with the plain language of the statute and then moving on to that additional evidence that sections two and three were not I see that my seven minutes pass very quickly. I'm not sure if there are other questions but I have reserved three minutes for rebuttal. Great, thank you very much. Press will now hear from the circle. May it please the court. My name is Michelle circle I'm here representing the Attorney General in this matter. There are basically three issues in the case, and they, which are set out in the briefs. I would like to address. Well address the one central reason, and whether it applies to the withholding provision. I think, as you, as you, as we set out in the brief, the prior to the real ID ID act amendments, the, there's a difference. There is a motivation provision that is brought in at least one central reason. Under the 1158 be one be one provision, where the applicant must show the tray is at least one central reason for the claim persecution. The INA does not however expressly set forth a motive standard for withholding. From our perspective, beyond requiring that the applicant show that his life or freedom would be threatened because of a protected trade. So the, the way the statute was written, the end the Supreme Court in gross basically said that if you have a provision. The words, because of mean by reason of which. So in the assignment, it was on account of, and in the withholding provision it was because of, and the Supreme Court in gross, and then other cases basically said that the ordinary mean would be a person x because of protected trade, only if the trade actually played a role in this decision and had a determining influence in the outcome that at least one central reason standard captures that ordinary meaning. And so, but can I ask you a question I mean Judge Murphy in dissent suggested that actually because of implies a higher standard than one central reason that it ought to be a but for cause. You're not arguing that right. No, I'm not arguing that I'm arguing that the traditional way has been interpreted by the board and and the courts have have They, they've used the one central, they've used the, I'm sorry, the on account of, and one central reason standard, because the, the, it was silence in the provision with regard to withholding. And so traditionally that's the way I had been interpreted. And the, since it was interpreted that way that Chevron deference was was given. And that's, that's the way the courts interpreted, then came the reality, real ID act, and this provision where they put in, in the amendment that they, you know, the codified the, the one central reason. And so, because they had problems with the Ninth Circuit in the Borja case was was using a lesser standard, and they wanted that to be the one central reason standard for for asylum. And so you're not agreeing with Judge Murphy's dissent with respect to but for cause but you are agreeing, I think, with Judge Murphy's dissent, where you said it would be illogical for Congress to hide a substantive change to the statute and the dependent clause of a sub paragraph about the procedures for resolving claims that that's that's that is that I agree with. As for the but for I'm not sure what the department's position is on that, to be honest. But I will say the other the other arguments that we believe that the language used was a shorthand reference to the list of protected traits, when it just referenced, you know, for a reason described in some paragraph, a USC 1231 B3C is just a shorthand reference to the list of portrait of the protected traits in some paragraph, a, which refers to race, religion, nationality, we don't think that's a substantive change in the motivation requirement. And, and so if it's not a substantive change, then it's you still have the silence. In the, in the statute, and so therefore deference should be given to the board's interpretation. I'm sorry, I can't hear you. There's one other point that I'm. Can you hear me now. Yes, I can. That better is that normally the withholding provision is more of a challenge for for a, an immigrant for a petitioner. Because, and usually if the petitioner can't make it under asylum you don't have to go any further with withholding because they're not going to make withholding. So it's odd that it would have. And this actually I think kind of cuts in your direction that you'd have a change in the motive and in the mixed motive calculation for and make it easier for the petitioner in that regard, but not but but where the provision itself is much harder for Right, and I think it would be more times to make something like that more explicit and they won't just hide it in this other sort of procedural provision, you know, where, where they were trying to just bring in. You know that you would use the same credibility standards and stuff as you use an asylum, but then it wouldn't make this big change for You know, for withholding and not say, you know, more explicitly than what you have here. And we address that in our brief. So I would refer you to that. I if I'd like to turn now to the Whether substantial evidence that supports age agencies conclusion that petitioner felt establishes One central reason That that that I'm sorry that his Ethnicity was one central reason for the harm persecution that he alleges So in this case, the petitioner basically You know, said that there was two incidents in which he was physically harmed and then there was some subsequent subsequent incidents where he was robbed. And then incidents where the While being robbed the gang. In one of his declarations while being robbed the gang made racist names and comments call him an Indian and that that He wouldn't get any help because because he was Indian and didn't have any education. And that the police wouldn't help them. In his testimony when they asked him Was he aware of any reason why he was singled out the first incident. He was on a bus predominantly people of his ethnicity that were on the bus. They were young coming back. They were like teenage years or maybe young young adults coming back from the countryside and he basically said that there was a lot of families on the bus. But he didn't have a family with him. And so he they picked him out and then they Put a knife to him to force them off the bus. And then he that so he gave them his their his money, but When they wanted his shirt push one of them down and then he took off running and they caught up with them and then they basically punched him. So, and then threatened them not to that they could recognize him and not to tell the police. So, and then the second one. Again, he was with a group of his friends there. There was, I think, five of them all together. They were coming back from a night out. And they were set upon. They happen to be in the same street by a group of 10 members of the gang. So they are greater numbers. And so then they wanted their course money again. Which he and three others that were in his group comply, but then one of them didn't wanted to fight and then the leader of the gang knifed him and basically he ended up dying and then they You know, they basically told him that they beat him up a little bit and told him not to tell the police. So I would say when you look at the how these things progressed and how they came about That the motive of the gang was not necessarily because they're of their ethnicity rather their opportunistic victims and the gang was motivated for You know, to get money, essentially. And that they were beating them up or warning they were threatening them because they didn't want to go to the police. And so I would say that's the one central reason, as the board said, and that ethnicity. While there were some comments made apparently that was not a one central one of the one central reasons for what happened to This individual Then Questions. No, I was gonna say that we hit the red on the clock. But do you want to wrap up something else or Yeah, I just, you know, I rely for that for that conventions against torture claim. I believe that was waived when they didn't adequately brief that The reasons why they thought that the IJ's decision was wrong to the board. And since they waived it before the board, they failed to exhaust their administrative remedies on that that issue. Thank you. We'll now hear from his press for three minutes, everybody. Thank you, Your Honor. Quickly to Judge Walker's point on withholding generally being a more difficult form of relief for applicants to obtain. Of course, that remains true withholding of removal, the likelihood standard is a more likely than not standard. That meaning that applicants need to demonstrate that it's 50% or higher. There's a 50% or higher likelihood that they will be persecuted in the future. I think it in fact makes sense that with the more certainty we have that somebody will be persecuted severely harmed if returned to their home country. The reason why they will be harmed becomes less important. It doesn't become irrelevant. And that's the unaccounted right it doesn't become unimportant altogether, but the degree to which the protected characteristic is important becomes less so with the rising certainty of future persecution. But regardless, it's the language of the statute that this court is of course tasked to deal with and to interpret. And it is the ordinary plain meaning of that language that this court is asked to grapple with. And I would revisit my argument that the plain meaning is clear. And a reason for a reason. The definition is on a spectrum between one of many to the exclusive reason with regards to that does seem like an unlikely place to put a substantive change pretty significant one. To tuck it in, hide it there where you're really talking about the burden of proof and credibility. Your Honor, I don't have an answer to why they did it that way. But isn't it also strange that they didn't, if they wanted to incorporate the one central reason standard that they didn't do so when they had the opportunity such subsections two and three of the same asylum statute are explicitly incorporated into the withholding statute. So if they had wanted to incorporate the one central reason standard. Why didn't they do it explicitly that they didn't suggest that they that they left it out purposefully. But it also could be that they were used to its use prior use and it just never occurred to them because why would you have two different standards for asylum and withholding. And they wasn't prior to this. Your Honor, I didn't catch the very end of what you, of what you said. There weren't prior, there weren't different standards prior to the change. They were both one central reason, right. In terms of motivation. They were both the same, what predated one central reason with the mixed motive analysis. But, right. I mean, but different standards do apply to asylum and withholding of course the asylum applicant shows a well founded fear of future persecution a 10% likelihood in a withholding applicant shows a 50% likelihood of future persecution so different standards have always applied to these different forms of humanitarian relief, but I have very little time and I wanted to just briefly touch on my colleagues point regarding future fear and my clients indigeneity, I want to, I just want to stress that the immigration judge did not make any findings with regards to Mr pooches ethnicity based or race based claim all factual findings were made by the board on this issue which of course is an impermissible thing for them to do the issue of persecutory motive and the issue of likelihood of something to occur in the future are both findings of fact, we know that from from board precedent and we know that from this court's precedent, the immigration judge did not reach those issues, the board, so a sponte did and in this way engaged in impermissible fact finding and I think on that alone. This case should be remanded to the agency. And then finally with regards to the cat claim, and the board also has precedents that speaks to when a claim is not fully developed but rather, but regardless is not waived and I'm found to have preserved her cat argument on appeal, there is very little to distinguish Mr pushes appeal from the appeal in matter of nm. And despite that the board did not properly apply its own precedent with regards to his cat. His cat claim, and I would of course argue that he had he therefore did not waive his cat claim and the board misapplied its own precedent. All right. Well thank you very much both of you we will reserve decision, but will argue that concludes our arguments for this morning. Before we adjourn I just want to thank the deputy Miss Rodriguez and all the technical folks who make sure that we can run in zoom, the way we have today it worked, I thought, seamlessly, which is a great thing, hopefully it won't be too long, but we're very fortunate to have expertise within the court that make us able to run this way when needed. So with that, I wish everybody a good day and Miss Rodriguez you may adjourn for course Spencer john. Thank you. I'll transfer you. Thank you very much. Thank you. How do I shut off. Leave this a button on the bottom. This is what me. That's the button. I got it. All right.